IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

CIVIL ACTION NO. 3:13-cv-00022(WOB-HBG)

BUILDERS MUTUAL INS.
CO.                                                    PLAINTIFF

VS.             <u>MEMORANDUM OPINION AND ORDER</u>

CLAYTON PICKENS,
ET AL.                                                 DEFENDANTS

This is a declaratory judgment action in which plaintiff seeks a ruling regarding coverage under commercial general liability insurance policies it issued to defendant Clayton Pickens.

This matter is before the Court on plaintiff's motion for summary judgment (Doc. 13) and defendants' motions to amend their answers (Doc. 28, 30).

The Court heard oral argument on these motions on Friday, July 12, 2013, via telephone. Paul Whitt represented the plaintiff, and Jeff Murrell and Jim McDonald represented defendants Clayton and Jama Pickens. Court reporter Joan Averdick recorded the proceedings.

Having heard the parties, the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

Defendant Clayton Pickens ("Pickens") is a residential homebuilder in Tennessee. Plaintiff, Builders Mutual Insurance Company ("BMI"), issued to Pickens two commercial general liability policies covering the period from October 15, 2007 to October 15, 2009. (Doc. 1, Exhs. A, B). The material terms of these policies are identical.

In 2008-2009, Pickens built a new home for defendant John Underwood ("Underwood"). When it came time to pay the final bill for the home, however, Underwood disputed many of the costs. Pickens filed a lien against the home in June 2009 and then filed suit against Underwood in Tennessee state court in July 2009, seeking to recover an unpaid balance of approximately $150,000.

Underwood counterclaimed against Pickens for construction defects, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act. (Doc. 1, Exh. C). Underwood alleged that there were numerous defects in the house, including improperly installed subflooring, concrete driveway, concrete garage floor, front porch, master shower, and propane gas range. (*Id.*). Underwood also filed a Third-Party Complaint against Pickens's wife, Jama Pickens, alleging that she was a partner in her husband's business. (Doc. 1, Exh. D).

2

BMI filed this action on January 15, 2013, seeking a declaration that it owes no duty to defend or indemnify Pickens in connection with the claims brought against him by Underwood.

The above pending motions are now ripe for resolution.

## *Analysis*

"Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012) (citations omitted).

Commercial general liability ("CGL") policies "are designed to protect an insured against certain losses arising out of business operations." *The Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). CGL policies "are divided into several components, including the 'insuring agreement,' which 'sets the outer limits of an insurer's contractual liability,' and the 'exclusions,' which 'help define the shape and scope of coverage' by excluding certain forms of coverage." *Id.* (citation omitted).

When interpreting a CGL policy, the Court should first

3

construe the "insuring agreement" and then construe the "exclusions." *Id.* at 306.

The "insuring agreement" of the policies at issue in this matter provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

(Doc. 1, Exh. A at 44).[1]

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1, Exh. A at 57).

These policies also contain an exclusion entitled "Damage to Your Work," which states that coverage does not extend to "'Property damage' to 'your work' arising out of it or any part of it." (Doc. 1, Exh. A at 48). "Your work" is defined as "Work or operations performed by you or on your behalf" and "Materials, parts or equipment

---

[1] Page references are to the electronic case filing page numbers on the document.

4

furnished in connection with such work or operations."
(Doc. 1, Exh. A at 58).

Further, while the "Your Work" exclusion provides that it does not exclude work performed on the insured's behalf by a subcontractor, both policies carry an endorsement which removes that exception, thus leaving work performed by subcontractors within the scope of this exclusion.

The Court will assume, as do the parties, that the claims alleged by Underwood against Pickens in the state court action relating to defects in the home constitute an "occurrence" within the meaning of the insuring agreement of the policies. (Doc. 15 at 16 n. 8).

Nonetheless, it is clear from a review of the allegations of those claims that the alleged deficiencies in the home constructed by Pickens arise out of allegedly incomplete or faulty workmanship, procedures, and/or materials. (Doc. 1, Exh. C at 8-9). The Court thus concludes that such claims fall squarely within the parameters of the "Your Work" exclusion contained in these policies.

The Supreme Court of Tennessee has long held that, pursuant to such exclusions, "the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded

5

upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Vernon Williams & Son. Constr., Inc. v. Cont'l Ins. Co.*, 591 S.W.2d 760, 765 (Tenn. 1979). *See also id.* at 764 ("The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself . . . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.") (citation omitted).

Pickens essentially concedes this point in his opposition to BMI's motion (Doc. 25 at 2) because his only argument against summary judgment is that BMI is estopped from denying coverage based on representations to Pickens by BMI's agent. Specifically, Pickens avers in an affidavit that, at the time he purchased the insurance, he told BMI's agent that he (Pickens) "desired to have full coverage to protect me in the event I was sued," and that he believed the policies afforded him such coverage. (Doc. 26 ¶ 3). Pickens further avers that the agent did not advise him of the subcontractor exclusion. (Doc. 26 ¶ 4).

6

As support for this argument, Pickens relies on *Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1 (Tenn. 1991), in which the Court held that any contractual provision of an insurance policy may be waived by the acts or representations of the insurer's agent. *Id.* at 13.

Pickens's reliance on *Bill Brown* is misplaced. Subsequent Tennessee decisions make clear that the rule of *Bill Brown* applies only where the insured has no knowledge that the agent lacks authority to make representations that would alter the policy terms, and that where the policy states that its terms can be amended or waived only by the company, the insured is charged with that knowledge and a claim for waiver by estoppel will not lie. *See Finchum v. Davenport*, No. M2007-00559-COA-R3-CV, 2008 WL 2019408, at *7-8 (Tenn. Ct. App. May 9, 2008); *Reed v. Nat'l Found. Life Ins. Co.*, No. 03A01-9603-CV-00081, 1996 WL 718467, at *3-4 (Tenn. Ct. App. Dec. 16, 1996).

The policies in this matter contain the following common policy condition:

> **B. Changes**
>
> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. *This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.*

7

(Doc. 1., Exh. A at 31).

Thus, Pickens is charged with the knowledge that the agent lacked the authority to alter the policy terms, and his estoppel argument fails as a matter of law.[2]

For the above reasons, the Court concludes that BMI is entitled to summary judgment and the declaratory relief it seeks.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that plaintiff's motion for summary judgment (Doc. 13) be, and is hereby, **GRANTED**; defendants' motions to amend their answers (Doc. 28, 30) be, and are hereby, **DENIED**; and a judgment shall enter concurrently herewith.

---

[2] The Court also concludes that the claims asserted by Underwood against Pickens and his wife which are not directly related to the defective work -- *e.g.*, negligent/fraudulent contract administration, fraudulent inducement, violation of the TCPA, and other claims relating to Pickens's contractor's license -- do not involve any alleged "bodily injury" or "property damage" so as to fall within the insuring agreement of the policies.

This 18th day of July, 2013.



Signed By:
William O. Bertelsman
United States District Judge